**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,<br><br>Defendants. | ) | No. 0:26-cr-00025-LMP-DLM<br><br>**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS RE. DISCOVERY AND OTHER PRE-TRIAL DISCLOSURES** |

The United States submits this consolidated opposition in response to all of the Defendants' 37 pending discovery motions, namely, the following:

A. Defendants' Motions for Early Disclosure of Jencks Act Materials (Docs. 596, 615, 626, 651, 665, 681, 704, 708, 717, 736, 741, 764, 765);

B. Defendants' Motions for Disclosure of Favorable Evidence (Docs. 601, 705, 717, 735, 741, 764, 765);

C. Defendant's Motions for Disclosure of 404(b) Evidence (Docs. 598, 615, 626, 651, 656, 680, 679, 717, 735, 741, 752, 764, 765, 785) and to Set Date for Rule 404(b) Disclosures (Doc. 720);

D. Defendants' Motions for Disclosure of Experts Under Rule 16(a) (Docs. 599, 615, 626, 651, 689, 709, 735, 741, 764, 765);

E. Defendants' Motions for Disclosure of Post-Conspiracy Statements (Docs. 600, 615, 626, 651, 682, 710, 717, 735, 741, 764, 765, 785, 833);

F. Motion for Government to Retain Rough Notes (Docs. 658, 683, 728);

G. Defendants' Motion for Notice of Government's Intent to Use Residual Hearsay Exception Under Federal Rule of Evidence 807 (Doc. 692, 764);

H. Defendants' Motions for Pretrial Disclosure of Government Exhibits and Trial Witnesses (Doc. 693, 764);

I. Defendants' Motions for Disclosure of *Giglio* Material (Docs. 732, 735, 741, 764, 765);

J. Defendants' Motions for Disclosure of Confidential Informants, Other Witnesses, and to Make Interviews Available (Docs. 657, 684, 691, 753, 764, 765, 785);

K. Defendants' Motions for Discovery (Doc. 754) and Discovery and Inspection (Docs. 597, 707); and

L. Defendant's Second/Renewed Motion for Release or *In Camera* Review of Grand Jury Materials (Doc. 715).

## RESPONSES

### A. Response to Defendants' Motions for Early Disclosure of Jencks Act Materials (Docs. 596, 615, 626, 651, 665, 681, 704,[1] 708, 717, 735, 736, 741, 764, 765)

Defendants move this court for an order pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure requiring the Government to

[1] Defendant Lemon's Motion at Doc. 704 is titled "Motion for Early Disclosure of Jencks Act Materials," but the substance of the motion is clearly requesting 404(b)

disclose "all statements and reports within the meaning of the Jencks Act, 18 U.S.C § 3500" (Doc. 596) and that it do so no later than 30 days, 14 days, or 7 days before trial. (Docs. 596, 665, 681, 708.) Without citing to a single authority, Defendants argue that the court has "the inherent power to require the Government to produce Jencks Act material prior to trial in further interest of the prompt disposition of the business of the court." *Id*. Further, Defendants Fort, Armstrong, Hansa, Gogligoski, Bollman, Dunlap, Vergin, Richardson, Blumenfeld, Beute and Perry allege that Rules 102 and 403 of the Federal Rules of Evidence and the enactment of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*., modified the effect of the Jencks Act. (Docs. 596, 615, 626, 651, 681, 704, 717, 735, 736, 741, 764, 765.) Lastly, Defendants argue that the Court must grant their request "unless the Government convinces the Court that there is legitimate Government interest in not doing so." *Id*.

All of these motions must be denied. They ignore the text of the Jencks Act and long-standing precedent from the Eighth Circuit and this Court that has rejected similar defense arguments for decades. First, as all defendants have acknowledged, the Jencks Act expressly provides in relevant part that

---

evidence. Out of abundance of caution, the Government incorporates its arguments regarding the title to this reply, and regarding the substance of the motion in a separate portion addressing 404(b) evidence.

statements or reports made by a prospective Government witness are ***not subject*** to "subpoena, discovery, or inspection ***until said witness has testified*** on direct examination in the trial of the case." 18 U.S.C. § 3500(a) (emphases added). The Act itself provides remedies due to any failure to disclose "statements" in accordance with the Act, namely, an order striking the witness's testimony or declaration of a mistrial upon a showing of prejudice. *Id*. § 3500(d).

Second, "although in many cases the Government freely discloses Jencks Act material to the defense in advance of trial," the Eighth Circuit has held repeatedly that "the Government *may not* be *required* to do so" until after a witness has testified at trial on direct examination. *See United States v. White*, 750 F.2d 726, 729 (8th Cir. 1984) (emphasis added) (citing *United States v. Algie*, 667 F.2d 569, 571 (6th Cir. 1982)); *United States v. Douglas*, 964 F.2d 738, 741 n.2 (8th Cir. 1992) (same); *United States v. Wilson*, 102 F.3d 968, 971- 972 (8th Cir. 1996) (same); *United States v. Sturdivant*, 513 F.3d 795, 803 (8th Cir. 2008) (relying on statutory text); *see also United States v. Krueger*, 2024 WL 4151510 at *1 (D. Minn. Sept. 11, 2024) ("The Court lacks authority to order disclosure of the statements of prosecution witnesses before the conclusion of the witness's direct examination.").

The Jencks Act reserves to the Government "the decision to produce Jencks Act material earlier as an option, rather than a decision that a

District Judge may oversee or even override." *See United States v. Algie*, 667 F.2d 569, 571 (6th Cir. 1982) (cleaned up). Moreover, neither exigencies of court administration, nor Rules 102 and 403 of the Federal Rules of Evidence demonstrate "any intention on the part of Congress to amend the Jencks Act or to authorize a District Judge to require [the Government] to deviate from its terms against his judgement." *Id.* Likewise, there is no authority, and Defendants do not cite to one, that suggests that Congress intended to modify the mandatory language of the Jencks Act by the passage of the Speedy Trial Act, 18 U.S.C. § 3161, or that the Government carries a burden of "convincing" the court that it has a legitimate Governmental interest in not disclosing Jencks "statements" earlier than statutorily required.

Finally, as the Court well knows, the Government regularly produces Jencks materials before trial, and there's no need for the Court to alter or interfere with that practice. Indeed, back in April, in its very first discovery transmittal letter, the Government offered the following proposal subject to a reciprocal agreement by the defendants:

> The Government will produce to you any additional Jencks Act material — including any relevant grand jury transcripts, assuming a Rule 6(e) order has been issued — *one week before trial if you agree to the production of reciprocal Jencks material at that time or affirmatively represent that you have no Jencks material to produce.*

In short, the Government is taking a very reasonable approach regarding Jencks Act disclosures. The Court should not interfere with these efforts, but should instead allow the parties to work these issues out by themselves.

## B. Response to Defendants' Motion for Disclosure of Favorable Evidence (Docs. 601, 705, 717, 735, 741, 764, 765)

Defendants Fort, Goligoski, Vergin, Bollman, Dunlap, Armstrong, and Lemon move for an order pursuant to *Brady*, *Giglio*, and *Miller v. Pate*, 386 U.S. 1 (1967), to compel the Government to disclose any evidence in its possession that is exculpatory or relevant for impeachment purposes. (Docs. 601, 705, 717, 735, 741, 764, 765.) Defendants specifically request disclosure of a litany of items including but not limited to; identification, contradictory statements, prior conviction, statements, promises, offers or inducements of prospective Government witnesses, and impeachment evidence. (*Id.*) Additionally, Defendants Lemon, Bollman, Dunlap, and Armstrong request "the 2018 DOJ memorandum warning prosecutors not to charge the house of worship provision, 18 U.S.C. § 248(a)(2), and any and all other internal and external DOJ memoranda concerning the constitutionality, enforceability, applicability, or discussion of 18 U.S.C. § 248 or 18 U.S.C. § 241." (Docs. 705, 735, 741, 765.) This request should be denied.

To begin, the Government has complied with and will continue to comply with its obligations under *Brady* and *Giglio*. However, as noted in the

Government's prior filings (*see* Doc. 589), "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Madsen v. Dormire*, 137 F.3d 602, 605 (8th Cir. 1998). Under *Brady v. Maryland*¸373 U.S. 83, 87 (1983), the Government must "disclose any evidence favorable to the defendant…that is 'material either to guilt or to punishment.'" *United States v. Primm*, 63 F.4th 1186, 1192 (8th Cir. 2023) (quoting *Brady*, 373 U.S. at 87). The Government's disclosure obligation includes evidence relevant to a witness's credibility, *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), and a prosecutor also has "a duty to learn of any favorable evidence known to the others acting on the Government's behalf." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

To date, the Government has produced over 40,000 pages of documents, hundreds of audio and video files, hundreds of investigative process materials and more. To the extent evidence exists which is favorable to the moving Defendants (or other defendants), exculpatory and material to either guilt or punishment, the Government has either produced it or will produce it in a "timely manner" upon discovery thereof, in accordance with *Brady*. *See United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("[D]ue process is satisfied if the information is furnished before it is too late for the defendant to use *at trial*.") (emphasis added). The Government will continue to meet its *Brady* obligations and does not object to the Court reaffirming its

obligation, however, the Government cannot produce what simply does not exist.

As it relates to testifying witness impeachment material and testifying witness statements encompassed in Defendants' requests, they will be timely produced in accordance with *Giglio* and the Jencks Act, 18 U.S.C. §3500 (timing addressed above). As it relates to disclosure of impeachment materials for non-testifying individuals, this request exceeds the scope of *Brady* and *Giglio*. There is no authority permitting such disclosure, and Defendants have not cited to one.

Lastly, Defendants Lemon, Bollman, Dunlap and Armstrong's request for "[t]he 2018 DOJ memorandum" is far beyond the scope of *Brady* and *Giglio*. (Doc. 705, 735, 741, 765.) Again, *Brady* requires the disclosure of evidence in the Government's possession that is *material* to *either* (a) guilt, or (b) punishment. *See United States v. Ryan,* 153 F.3d 708, 711 (8th Cir. 1998). This request falls outside of *Brady* because it is simply immaterial to either guilt or punishment and wholly irrelevant. Defendants have failed to show materiality as required under *Brady*, and it cannot be said that non-disclosure of such an internal document would "'result in the denial of the defendant's right to a fair trial.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

"Materials relevant to agency guidelines are not discoverable as 'material to the defense' or *Brady*." *United States v. Salyer*, 271 F.R.D. 148, 168-69 (E.D. Cal. 2010) (citing *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)). "It is well established that the executive branch is privileged not to disclose intra-Governmental documents reflecting advisory opinion, recommendations and deliberations compromising part of a process by which Governmental decisions are formulated." *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973). The material Defendants seek in discovery regarding the constitutionality or applicability of 18 U.S.C. § 248 is not relevant to the guilt or innocence of Defendants and is outside the scope of Rule 16 because it is unnecessary for their defense against the Government's case in chief. Defendants' request seeks agency work-product which "enjoys almost absolute immunity" from production. *In re GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000). Accordingly, this motion should be denied.

**C. <u>Response to Defendant's Motion for Disclosure of 404(b) Evidence (Docs. 598, 615, 626, 651, 656, 680, 679, 717, 735, 741, 752, 764, 765, 785), and to Set Date for Rule 404(b) Disclosures (Doc. 720)</u>**

Defendants move for disclosure of Rule 404(b) evidence. Defendants Fort, Beute, Blumenfeld, Richardson, Goligoski, Hansa, Bollman, Dunlap, Vergin, and Armstrong specifically, and without citing to any authority, or explaining why immediate disclosure or 60 days before trial is reasonable,

request an order directing the Government to "immediately disclose—or alternatively, to disclose not less than 60 days before trial—any "bad act" or "similar course of conduct" evidence it intends to offer a trial." (Docs. 598, 615, 626, 651, 717, 735, 741, 764, 765, 785.) Defendant Edwards requests the same disclosure, but requests that disclosures be made "not less than thirty days before trial." (Doc. 752.) Defendant Matthias requests "immediate disclosure." (Doc. 656.) Defendant Crews requests disclosure without identifying a timeline. (Doc. 680.) And Defendant Kelly requests that disclosures pursuant to Fed. R. Evid. 404(b), and Fed. R. Evid. 608(b), be made no later than twenty-one days before trial. (Doc. 720.) Additionally, all Defendants generally request that the Government identify the basis for the evidence's admissibility and the witness through whom such evidence will be presented at trial.

Federal Rule of Evidence 404(b) requires the Government to provide reasonable written notice before trial when evidence of a crime, wrong, or other act will be used to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2); *see also* Fed. R. Evid. 404 (b)(3)(A) (prosecutor must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it."). Moreover, Rule 404(b) applies to the admission of wrongful-act evidence that

is extrinsic to the charged offense but does not apply to intrinsic evidence. *United States v. Sanderson*, 2025 WL 1098979 at *3 (D. Minn. Apr. 11, 2025) (citing *United States v. Ruiz-Chavez*, 612 F.3d 983, 988 (8th Cir. 2010)). Importantly, "Rule 404(b) does not require the Government "disclose directly or indirectly the names and addresses of its witnesses, something it is not required to do under [Fed. R. Crim. P.] 16."' *Id.* (citing Fed. R. Evid. 404(b) advisory committee notes to 1991 Amendments); *see also United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012) ("[I]n 1975, Congress amended Rule 16 to eliminate a requirement that the Government disclose its witnesses prior to trial.").

If applicable, the Government will fully comply with the notice requirements of Rule 404(b) of the Federal Rules of Evidence and will disclose any Rule 404(b) evidence within a reasonable time frame before trial. However, the Government opposes an order requiring immediate disclosure, the disclosure of 404(b) evidence 60 days before trial, and any requirement that it disclose anything more than what is required under Rule 404(b). *See United States v. Sanderson*, 2025 WL 1098979 at *2 (finding disclosure reasonable no later than two weeks before trial and holding that 404(b) does not require the Government to disclose directly or indirectly the names and addresses of its witnesses nor does it require disclosure of intrinsic evidence.). Accordingly, the Government proposes to make its notification 30 days prior

to trial, which the Government believes is a reasonable notice period under the circumstances. *See* Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances [of] each case.").

As to Defendant Kelly's request for disclosure pursuant to Rule 608(b), Doc. 720, this request should be denied. Defendant Kelly does not cite any authority that would require this Court to order the Government to provide notice or disclosure with respect to Rule 608(b). Indeed, "[r]ule 608 does not contain any specific provision requiring pretrial notice of such evidence be given to a defendant." *United States v. Thompson*, 2023 WL 9067705 at *3 (D. Minn. Oct. 13, 2023), *report and recommendation adopted*, 2023 WL 8714481 (D. Minn. Dec. 18, 2023). Moreover, Rule 16 does not provide a statutory pathway for such a disclosure. *United States v. Castaneda-Santana*, 2021 WL 1589547 at *1 (D. Minn. Apr. 23, 2021) ("By definition, Rule 608(b) evidence may not be used during the Government's case-in-chief, and therefore, it is not discoverable under Rules 12 or 16."). Accordingly, this request should be denied.

## D. Response to Defendants' Motions for Disclosure of Expert Under Rule 16(a) (Docs. 599, 615, 626, 651, 689, 709, 735, 741, 764, 765)

Defendants move the Court for the disclosure of expert testimony and for a written summary of all expert testimony that the Government intends to use at trial pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). (Docs. 599 615, 626, 651, 689, 709, 735, 741, 764, 765.) Without specific reasoning, Defendants Fort, Beute, Blumenfeld, Richardson, Lemon, Bollman, Dunlap, Vergin, and Armstrong request that disclosures be made "60 days before trial." (Docs. 599, 615, 626, 651, 709, 735, 741, 764, 765.) Defendant Adamson alternatively requests that such disclosures be made "no later than twenty-eight (28) days prior to trial." (Doc. 689.)

The Government will comply with the obligations imposed by Rule 16(a)(1)(G) and with any deadline set by the Court regarding expert disclosures. However, the Government objects to this request to the extent that it seeks to impose any obligation on the Government beyond what is required by Rule 16(a)(1)(G). The Government requests a reciprocal expert disclosure deadline, and proposes expert disclosures be made 45 days before trial. *United States v. Carson*, 2021 WL 4739866 at *2 (D. Minn. Oct. 12, 2021) (finding that "given the ambiguous nature of Defendant's proposed disclosure deadline and lack of any reasoning for initial disclosures 60-plus

days before trial, the Court orders that no later than 30 days prior to trial, the parties shall make their principal expert disclosures…”).

**E. Response to Defendants' Motions for Disclosure of Post-Conspiracy Statements (Docs. 600, 615, 626, 651, 682, 710, 717, 735, 741, 764, 765, 785, 833)**

Defendants move for an order compelling the Government to provide “notice of intent to use or refer to, and/or introduce into evidence at trial statements of any co-defendant or unindicted co-conspirator, together with a designation of which statement or confessions the Government plans to utilize” pursuant to Federal Rule of Criminal Procedure 16(c) and *Bruton v. United States*, 391 U.S. 123 (1968). (Docs. 600, 615, 626, 651, 682, 717, 735, 741, 764, 765, 785.) Defendants further request leave to file or supplement motions for severance, suppression, and/or limine pending a review of relevant *Bruton* materials and the Government's response. (*Id*.)

The Government is fully aware of the contours of *Bruton* and will not offer in a joint trial any statement by one Defendant that implicates another explicitly, pursuant to *Bruton* and its progeny. However, to the extent that Defendant Fort requests the statements of *testifying* co-defendants, or unindicted co-conspirators if any, these are covered by the Jencks Act, and the Government incorporates its objection to any Court-ordered deadline for the early disclosure of Jencks Act materials. *See* 18 U.S.C. §3500(a).

As to statements of co-defendants or unindicted co-conspirators that may fall outside of the Jencks Act and are sought pursuant to Rule 16, the Rule "does not require the Government's pretrial disclosure of *all* statements of co-defendants" or unindicted co-conspirators. *See United States v. Lopez*, 2024 WL 4682677, at *5 (D. Minn. Sept. 3, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 4635317 (D. Minn. Oct. 31, 2024); *see also United States v. Dornsbach*, 2023 WL 2666480 at *4 (D. Minn. Mar. 28, 2023) ("It is well settled in the Eighth Circuit that Rule 16 allows for the discovery of statements made by defendants, but not statements made by others, including co-conspirators."). Indeed, Rule 16 "stresses that only statements made *by the defendant* are discoverable." *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992). Therefore, because Defendants request statements made by others, the Court should deny Defendant's motion insofar as they seek pretrial disclosure of statements or confessions of any co-defendant or unindicted co-conspirator pursuant to Rule 16.

Likewise, to the extent this motion is construed to suggest that *Bruton* requires disclosure of statements by co-defendants, such requests are beyond the reach of *Bruton* and its progeny and Defendants have not cited to any authority establishing the Government is required to disclose the statements of such persons at this stage. *See United States v. Abari*, No. 2020 WL 1983732 at *2 (D. Minn. Apr. 27, 2020) (rejecting defendant's suggestion that

*Bruton* requires disclosure of statements by co-defendants). *Bruton* addresses the issue of "admission of a co-conspirator's statement at trial, where the co-conspirator's admission was hearsay as it related to the defendant, and not whether the statement was discoverable by the defendant." *United States v. Abari,* 2020 WL 1983732 at *2 (citing *Bruton*, 391 U.S. at 137). "Although *Bruton* may raise potential issues to be considered at trial, it does not require pretrial disclosure of statements made by co-defendants or co-conspirators." *Id*. "These types of evidentiary issues, and any appropriate responsive measures, are matters best left to the sound discretion of the District Court." *United States v. Jalloh*, 2023 WL 4145828 at *6 (D. Minn. June 23, 2023).

To the extent that any post-conspiracy statements of any co-defendant or unindicted co-conspirators exist and fall under *Brady*, or the Jencks Act, the Government will continue to honor its discovery obligations and will disclose in a timely fashion in accordance with the court's order and statutory obligations.

Finally, Defendants' request for an order granting them leave to file motions for severance, suppression, and/or in limine should be denied as premature. Defendants have not identified what evidence they seek to sever or suppress or what motions in limine they propose to file. *See United States v. Abari*, 2019 WL 2417711 at *1 (D. Minn. June 10, 2019) (denying

defendant's request under *Bruton*, Rule 16 and for leave to file motions as premature because defendant did not identify what evidence he sought to sever or suppress, or what motions in limine he proposed to file).

### F. <u>Motion for Government to Retain Rough Notes (Docs. 658, 683, 728)</u>

Defendants Perry and Matthias move the Court for an Order requiring "any law enforcement agent, including any confidential reliable informants, to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of such rough notes are incorporated in official records." (Doc. 658, 683.) In addition, Defendants Charles Swenson and Robyn Swenson request that the order be extended to "the Government, including the Justice Department and the Executive Branch," and that notes pertaining to the "charging decision" be included in the retention order. (Doc. 728.) Defendants Charles Swenson and Robyn Swenson further request the retention of specific communications, recordings, memorandum, and photographs concerning the decision to "prosecute the Swensons," the "10:30am service at the Cities Church on January 18, 2026," and the meeting at "a shopping center as alleged in paragraph 7.b of the Superseding Indictment." (Doc.728.)

Because it is not required by law, the Government objects to any order requiring the preservation of Executive Branch communications with the

Department of Justice. Those communications are already subject to preservation under the Presidential Records Act. *See* 44 U.S.C.A. §§ 2201-2203. A Court order requiring preservation of those communications would be redundant in that sense and, more importantly, without proper independent authority. Moreover, to the extent that this motion may be interpreted as requesting disclosure of such information, the Government objects.

Under Eighth Circuit precedent, it is settled law that rough notes are not considered "statements" within the meaning of the Jencks Act. *See United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a "statement" of witness as there was no evidence that the witness signed, adopted, or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover Government agents' general notes from witness interviews). Other Circuits are in accord in holding that agent rough notes are not generally discoverable as a "statement" of the agent under the Jencks Act. *See United States v. Simtab*, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agents' destroyed rough notes of investigations because not Jencks Act material when merely represented pieces of information put in writing to refresh memory); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes,

contact sheets, witness lists, summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

Similarly, Rule 16(a)(2) of the Federal Rules of Criminal Procedure exempts from discovery internal memoranda and other Government documents made by Government agencies in connection with the investigation or prosecution of the case, thus exempting the aforementioned Executive Branch and Department of Justice communications from discovery. Thus, defendants' request for internal communications of the Executive Branch concerning the decision to "prosecute the Swensons" (or any other defendant) must be denied because any such records are privileged and not subject to discovery.

## G. Response to Defendants' Motions for Notice of Government's Intent to Use Residual Hearsay Exception Under Federal Rule of Evidence 807 (Doc. 692, 764)

Defendants Adamson and Vergin move pursuant to Fed. R. Evid. 807 for an order requiring the Government to provide notice of its intent to use residual hearsay at least 30 days before trial and for the names and addresses of those making the hearsay statement(s). (Doc. 692.) It's hard to recall the last time Government counsel relied on the ol' residual hearsay exception, but defendants' motions are a good reminder of Rule 807's utility

and its notice requirement. As explained below, however, these motions are invalid and should be denied.

Fed. R. Evid. 807 provides that a residual hearsay "statement is admissible only if the proponent gives an adverse party *reasonable notice* of the intent to offer the statement — including its substance and the declarant's name — so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b) (emphasis added). "The notice must be provided in writing *before the trial or* hearing — in any form *during the trial* or hearing if the court, for good cause, excuses a lack of earlier notice." *Id*. (emphases added).

As with many of the rules that defendants are invoking in the onerous stack of pre-trial motions, Rule 807's "residual" hearsay exception is largely self-executing; it has a notice requirement built into it. *See* Fed. R. Evid. 807(b). Thus, no order is required to implement it. If the Government tries to rely upon Rule 807 without "reasonable" notice prior to trial, we suspect that the defendants may object and the Court will sustain the objection unless the Government has "good cause" that excuses the lack of prior notice. *Id*. The rule sets up a little incentive structure encouraging pre-trial notice that is "reasonable," and nothing more is required from the Court to implement the rule.

Moreover, because the Rules Committee declined to set a specific deadline for Rule 807 notice, this Court should also refrain from doing so,

especially the absurd request of 30-days before trial. In the 2019 Amendments to the rule, the Committee said that, "[t]he rule retains the requirement that the opponent receive notice in a way that provides a fair opportunity to meet the evidence." *See* Fed. R. Evid. 807, committee notes re. 2019 amendments. However, the text of Rule 807(b) makes clear that notice even "during trial" may be sufficient if it's excusable for "good cause." Fed. R. Evid. 807(b). "When notice is provided during trial after a finding of good cause," the Committee notes explain that "the court may need to consider protective measures, such as a continuance, to assure that the opponent is not prejudiced."

For all of these reasons, an order setting a hard and fast notice requirement — 30 days in advance of trial, no less — would be improper because it conflicts with the provisions of Rule 807. Moreover, to the extent Defendants seek disclosures outside the Government's obligations under Rule 807, including any declarant's address, the Government also objects on the ground that Rule 807 does not require disclosure of a declarant's address to satisfy its notice requirement. *See United States v. Williams*, 2023 WL 4373905 at *1 (D. Minn. July 6, 2023) (denying defendant's request for disclosure of declarant's address noting that disclosure of a declarant's address is no longer required by Rule 807). As explained in the rule's

committee notes, the 2019 amendments to Rule 807 struck the prior requirement that the notice included the declarant's address:

> [T]he prior requirement that the declarant's address must be disclosed has been deleted. That requirement was nonsensical when the declarant was unavailable, and unnecessary in the many cases in which the declarant's address was known or easily obtainable. If prior disclosure of the declarant's address is critical and cannot be obtained by the opponent through other means, then the opponent can seek relief from the court.

*See* Fed. R. Evid. 807, committee notes to 2019 Amendments.

At this point, the Government does not know if it will seek to rely upon the residual hearsay exception at trial. If it appears necessary as to any particular item of evidence, the Government obviously has a strong interest in complying with Rule 807's notice requirement, lest it be barred from introducing such evidence due to insufficient notice. Because the rule is self-executing and allows "notice" during trial for good cause, the Court should deny defendant's motion. If the Court believes a deadline may be set, the Government suggests notice of not less than three days before trial, but with an express provision that allows for notice during trial for good cause, as the rule allows.

## H. Response to Defendants' Motion for Pretrial Disclosure of Government Exhibits and Trial Witnesses (Doc. 693, 764)

Defendants Adamson and Vergin move for an order requiring "the parties to disclose a preliminary list of witnesses and exhibits and produce an electronic version of trial exhibits no later than twenty-eight (28) days prior to the commencement of trial." (Doc. 693.) The Government opposes this motion.

Trial management, including the timing and requirement of specific trial documents and disclosures is a matter within the discretion of the district judge. *See United States v. Holmes*, 2023 WL 1879528 at *3 (D. Minn. Feb. 10, 2023) ("The trial judge will determine the procedures under which trial will proceed in this manner, including the deadlines for production of witness and exhibit lists."). However, the Eighth Circuit has held that "[a] federal criminal defendant generally has no right to know about Government witnesses prior to trial." *United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013) (cleaned up). Therefore, this motion should be denied on that ground alone.

There are other case specific reasons why the subject defense motions should also be denied. First, the Government intends to file a motion to sever this case for trial, with the first trial against the leaders/organizers and some of the other most hostile and aggressive protestors. The witnesses for each

trial *may* vary. Thus, one disclosure date for all potential trial witnesses is not appropriate for this case, and that is a matter best left to the discretion of the district judge. Second, as the Government has explained in prior filings and at least one hearing, the Government is concerned about the safety of victims. That concern is especially acute as to any victim who may be designated as a potential trial witness. We don't want them doxxed or otherwise harassed or intimidated. The nature of the offense conduct in this case makes that concern more than speculative, given that the defendants targeted the Church and its congregants, especially the ICE officer and pastor, for purposes of intimidation. Thus, any disclosure date that might be ordered should be no more than a week before any given trial in this case.

Finally, the Court should impose such an order only if it also applies to the defendants as well and is enforced against them equally. The subject motions seem to envision that the disclosure order would apply to "the parties," not just the Government. However, such requirements are rarely enforced with equal vigor against defendants because, after all, they've got rights. Likewise, the Government is often hesitant to enforce such an order against a defendant, because we have no interest in litigating § 2255 motions for ineffective assistance due to some counsel's failure to timely disclose a defense witness.

## I. Response to Defendants' Motion for Disclosure of *Giglio* Material (Docs. 732,735, 741, 764, 765)

Defendants Hansa, Bollman, Dunlap, Vergin and Armstrong move for an order "requiring the Government to disclose all information subject to *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny at least 28 days before trial." (Docs. 732, 735, 741, 764, 765.) Defendants further request that the Government "certify that it has conducted a reasonable inquiry into all agencies and personnel involved in the investigation and prosecution." (*Id.*) The subject motions should be denied because both requests are improper.

*First*, insofar as Defendants request information regarding witnesses who the Government does not intend to call at trial, the Government objects to those disclosures as beyond the scope of *Giglio*. *See United States v. Lopez*, 2025 WL 3687754 (D. Minn. Dec. 19, 2025) ("Because an officer who does not testify cannot be impeached, the obligation to disclose impeachment information recognized in *Giglio* 'only applies to testifying officers.'" (citation omitted)).

*Second*, as it relates to impeachment material of any testifying witness, the imposition of a 28-day notice requirement is unreasonable. For the same reasons noted in the preceding section of this opposition brief, the Government should not have to identify or disclose the identity of trial

witnesses four weeks before trial. Imposition of an extra requirement for disclosure of *Giglio* information for all such witnesses makes that schedule even more unreasonable. It sets up an extra hurdle that threatens the ability of the Government's ability to call relevant witnesses. It's also unnecessary. When the Government actually has impeachment material to disclose against any witness (*e.g.*, prior convictions, a prior false statement, etc.), experience teaches that the defense does not need a great deal of time to make full use of it at trial.

*Third*, a flat 28-day rule is not consistent with *Giglio* and its progeny. Giglio imposes a requirement of fair, reasonable, or sufficient notice. Thus, the Government's *Giglio* obligations are met if the "information is disclosed in sufficient time for [Defendants] to use it at trial." *Lopez*, 2025 WL 3687754 at *4. A flat deadline applicable in all circumstances ignores the general flexibility of *Giglio's* requirement of reasonable notice. The circumstances in any given case will vary, and an inflexible rule is not required of reasonable. For example, what if, during the week before trial, the Government learns of impeachment material or some is created by a witness during a pre-trial evidence review session? Too late? We can't call that witness because the artificial 28-day notice period has expired? Nonsense. That's not the way *Giglio* works, and the Government opposes any flat deadline accordingly.

*Fourth*, *Giglio* does not impose a certification requirement, and the Court should not create any such requirement. The Court's Rule 5(f) order and the general case law regarding *Giglio* is more than sufficient. The seemingly endless push to make criminal discovery more like civil discovery ignores Rule 16's intent and limits and, as with the subject motions, seek to unreasonably impose requirements beyond those imposed by *Giglio*.

*Finally*, the Government understands its obligation to "disclose matters that affect the credibility of prosecution witnesses" (*United States v. Beckman*, 787 F.3d 466, 492 (8th Cir. 2015) (cleaned up)), and it intends to fully comply with those obligations. Indeed, the Government has already turned over a large amount of statements, reports, audio/video recordings, and even agent notes. The Government will explore the existence of impeachment material during the weeks leading to any trial in this case, and we will promptly disclose impeachment material when and if we discover it.

### J. Response to Defendants' Motions for Disclosure of Confidential Informants, Other Witnesses, And to Make Interviews Available (Docs. 657, 684, 691, 753, 764, 765, 785)

Defendants Edwards, Perry, Vergin, Armstrong, and Hansa move for an order requiring the prosecution to provide them with "the identities of all informants who were witnesses to, or participants in, the crimes charged in the indictment or crimes concerning which the prosecution intends to

introduce evidence at trial and whose identity would be relevant and helpful to the defense or essential to a fair determination of th[e] case." (Doc. 684, 753, 764, 765, 785.) Defendants rely on *Roviaro v. United States*, 353 U.S. 53 (1957), to support their motions. Defendant Edwards further requests that, as part of the Government's disclosure, he should be provided with copies of the prior records of each informant, all promises of consideration given to each witness, identification of each informant's prior testimony, evidence of psychiatric treatment, and evidence if controlled substance use and abuse. (Doc. 753.) Defendant Matthias, and Hansa, request a much more extensive list, including, but not limited, to promises of immunity, leniency, preferential treatment or other inducements made to such persons as part of the case, writings or memoranda which contain any of the promises of remuneration, leniency, or immunity, and any record of payment of local, state or federal funds made to such persons. (Doc. 657.) Defendants Matthias and Hansa rely on Rule 16, *Giglio*, *Brady*, and *Napue* in support of their motions. Defendant Adamson moves for substantially the same information as Defendants Matthias and Hansa, seeking disclosure pursuant to *Roviaro*, *Brady*, and Rule 16. (Docs. 690, 691.) All Defendants request that the 'informants' be made available to interview.

Defendants' motions should be denied to the extent they request discovery and collateral orders that exceed the requirements imposed by case

law. The Government, for example, has no obligation to coordinate a pre-trial interview of an informant or any other witness, except perhaps a Rule 15 deposition. At most, the Government may advise an informant of a defendant's interest in an interview, and then the informant gets to decide for themselves whether they want to sit for such an interview. More importantly, the Government is currently not aware of any informants who were utilized in connection with the investigation of this case. Due to the "clandestine" nature of the offense conduct, the Government's investigation has been essentially reactive in nature. Thus, *Roviaro* is inapplicable.

If the Government obtains the cooperation of any defendant (e.g., through a cooperation-type plea agreement) *and* we decide to call such a defendant as a witness at trial, the Government will, of course, comply with its related discovery obligations. Defendants' motions cite to a bunch of cases and rules, but most of those citations are off point. The type of material that is the focus of the subject motions falls under the rubric of *Giglio* material — *e.g.*, promises of leniency at sentencing or the dismissal of certain charges, favorable Guideline stipulations, other promises that might appear in a cooperation-plea agreement, financial payments, etc. If the Government calls an informant or cooperating defendant for whom we have such impeachment material, we will disclose it in accordance with *Giglio*.

In *Roviaro* the Supreme Court held that "where the disclosure of an informer's identity… is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the [Governmental] privilege [against disclosure] must give way." 353 U.S. 53, 60–61 (1957).

In this case, the Government has noted that certain individuals were present at the Defendants' pre-operation briefing but did not (apparently, as to one or more) participate in the Defendants' conspiracy and subsequent invasion of Cities Church. Based on its review of the video evidence, the Government approached those individuals as witnesses, not targets. The Government does not regard those individuals as "confidential informants" or "cooperating" witnesses. They are percipient witnesses that the Government identified through regular investigative techniques. The Government has not entered into any cooperation agreement with any of them.

To call these witnesses "confidential informants" or "cooperating witnesses" is a misleading characterization. Indeed, there is a difference between an "informant" and a "cooperating witness." Informants are typically paid or given some other benefit by the United States for their testimony. *See United States v. Ridinger*, 805 F.2d 818, 821(8th Cir. 1986) (approving use of an instruction defining an informer as someone who "has an arrangement with the Government under which she gets paid for providing information to the Government"); *see also* Eighth Circuit Model

Jury Instruction 4.06 (defining informant as one who is testifying either to gain some advantage or to avoid some disadvantage, or who is paid on a contingency fee basis by the Government); *United States v. Lee*, 506 F.2d 111, 122-23 (D.C. Cir. 1974); *United States v. Klein*, 701 F.2d 66, 68 (8th Cir. 1983) (where a witness who did not receive any pay or promises was held not to be an informer). In contrast, a "cooperating witness" is typically somebody who "hopes to receive a reduced sentence on criminal charges pending against [them] in return for [their] cooperation" with the Government or prosecution. *See* Eighth Circuit Model Jury Instruction 4.05B; *see also United States v. Delacruz,* 2023 WL 5637704 at *17 (D.N.D. Aug. 31, 2023) (approving use of instruction defining a cooperating witness as "one who 'hope[d] to receive a reduced sentence on criminal charges pending against them in return for their cooperation with the prosecution in this case.'"). The witnesses in question do not fall under either category.

Finally, in a new batch of discovery that is being prepared for production next week, the Government is providing discovery to the defense relating to its interviews of these witnesses. Rule 16 does not require the broad disclosure that Defendants now request. Nor is *Napue* implicated at this time because it applies to the Government's obligation to correct a Government witness's *false testimony*. *See Napue v. Illinois*, 360 U.S. 264,

269 (1959). For all of the foregoing reasons, the subject set of motions should be denied.

**K. <u>Response to Defendant's Motions for Discovery (Doc. 754) and Discovery and Inspection (Docs. 597 and 707)</u>**

Criminal defendants do not have a general constitutional right to discovery. *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (citing *Weatherford v. Bursey,* 429 U.S. 545 (1977)). Therefore, in most circumstances, "a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the Government." *Johnson*, 228 F.3d at 924. Here, Defendant's request a litany of items simply by citing generally to Rule 16 of the Federal Rules of Criminal Procedure. (*See* Docs. 754, 597, & 707.) As explained below, all of the motions should be denied because they request discovery far beyond the scope of Rule 16 and other case-based disclosure obligations.

As noted above, the Government has complied with its obligations under Rule 16, *Brady*, and *Giglio*, and will continue to do so. Beyond those requirements, there is no general constitutional right to discovery in criminal cases, and Rule 16 does not authorize the expansive, speculative requests that Defendants now advance. *See United States v. Johnson*, 228 F.3d 920, 927 (8th Cir. 2000); *United States v. Siewert*, 2008 WL 3165852 at *2 (D. Minn. June 10, 2008). Indeed, Defendants "ha[ve] no right to "open file"

discovery from the Government." *United States v. Siewert*, 2008 WL 3165852 at *2. As such, these overbroad motions should be denied to the extent they go beyond Rule 16, *Brady*, *Giglio*, or Jencks.

**1. <u>Response to Defendant Edwards' Motion for Discovery (Doc. 754)</u>**

Defendant Edwards moves the Court pursuant to Rule 16 for an order requiring the Government to disclose 8 specific sets of discovery. (Doc. 754.) However, the Government objects to these requests to the extent that they exceed the Government's obligations under Rule 16, *Brady*, *Giglio*, or the Jencks Act. The motion should be denied.

Rule 16 (a)(1)(E) allows for disclosure of "documents" or "objects" "if the item is material to preparing the defense." "A showing of materiality [] is 'not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense.'" *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985) (quoting *United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970)). Similarly, this request falls beyond the Government's disclosure obligations under *Brady*. *Brady* only requires the disclosure of evidence material to guilt or punishment. *See United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011).

As to requests 7 (a)-(b), for example, Defendant Edwards has not established how the requested documents are material to preparing his

defense or are exculpatory. To the extent that Rule 16 encompasses certain materials, and *Giglio*, *Brady* and the Jencks Act apply, the Government has complied, and will continue to comply, with its discovery obligations. Notably, however, rough notes do not qualify as Rule 16 material because they constitute the agent's impression, not a statement by the defendant. *See United States v. Polk*, 715 F.3d 238, 249-50 (8th Cir. 2013) (observing that agent's notes are not Rule 16 material because they are the agent's impression of an interview and not a statement by the interviewee). As to materials pursuant to Fed. R. Crim. P. 16(a)(1)(G), the Government incorporates its argument in Section "D" of this brief.

### 2. Response to Defendant Fort's Motion for Discovery and Inspection (Doc. 597)

Defendant Fort moves for an order compelling the disclosure of five items presumptively pursuant to Rule 16. (Doc. 597.) To the extent that this request falls outside of Rule 16, the motion should be denied. In particular, the Government objects to Request No. 4, which makes a blanket request for inspection or copying of "books, papers, documents, photographs, tangible objects…which are material to the preparation of the defense." (Doc. 596 at 2.) Rule 16(a)(1)(E) allows for disclosure of "documents" or "objects" "if the item is material to preparing the defense." A mere conclusory allegation that

the requested information is material to prepare a defense is not sufficient. *See Krauth*, 769 F.2d at 476.

### 3. <u>**Response to Defendant Lemon's Motion for Discovery and Inspection (Doc. 707)**</u>

Defendant Lemon moves to compel the disclosure of 13 items pursuant to Rule 16. (Doc. 707.) Defendant Lemon additionally requests items pursuant to *Brady*¸ *Giglio*, and the Jencks Act. *Id* at 701-707-3.

As to items 1,2,3,5,6,7,8, 9, and 707-1, § II., § III, N, M, the Government has complied with its obligations under Rule 16, and we will continue to do so if additional items falling with the scope of Rule 16 are generated or discovered. To the extent that these items fall under Rule 16, exist, and have not been disclosed, the Government will produce and make available such items for inspection. However, to the extent that Defendant Lemon requests statements that are not his own, the Government opposes as beyond Rule 16. "It is well settled in the Eighth Circuit that Rule 16 allows for discovery of statements made *by the defendant*, but not statements made by others, including co-conspirators." *United States v. Dornsbach*, 2023 WL 2666480 at *4 (D. Minn. Mar. 28, 2023) (emphasis added).

As to Defendant Lemons' specific requests under *Brady*, Doc. 707-1, §III, the Government has complied with its discovery obligations under *Brady* and will continue to do so.

As to Defendant Lemon's request for return of his iPhone, or alternatively, reports and data concerning any examination of the cellphone seized incident to his arrest, the Government and Lemon's counsel negotiated a process by which Lemon could reclaim his phone following the filter team review. On September 28, 2026, Lemon's counsel submitted the required paperwork, and the Government will get the phone returned shortly *after* we have addressed the 101 pending pre-trial motions.

As to item 10 (seeking expert discovery), the Government incorporates its arguments from Section "D" of this brief.

As to requests made in 707-1 § III, I, the Government incorporates its arguments from Section "J" of this brief.

As to Defendant's request in 707-1, § I, requesting "indictment particulars," this request should be denied. The Government is under no obligation to provide this information and present its entire case before trial. *See United States v. Pope*, 613 F.3d 1255, 1259-1260 (10th Cir 2010) (noting "criminal proceedings have no extensive discovery and summary judgment procedures requiring both sides to lay their evidentiary cards on the table before trial"); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (same); *see also United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) (same). If defendant Lemon "believes that [the] indictment does not provide enough information to prepare a defense, then he [should have] move[d] for a

bill of particulars, *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (citing Fed.R.Crim.P.7(f)), like other co-defendants (*see* Doc. 763), and which the Government opposes.

The Superseding Indictment (Doc. 144) satisfies the requirements of Rule 7(f) and adequately informs Lemon of the charges against him. Moreover, the Government has to date provided extensive discovery, including video evidence and more than 40,000 documents. *See United States v. Brandstrom*, 2026 WL 74109 at *7 (D. Minn. Jan. 9, 2026), *report and recommendation adopted*, 2026 WL 632478 (D. Minn. Mar. 6, 2026) (finding Government's discovery productions provided details that otherwise may have been required in a bill of particulars). Moreover, in light of the ample discovery, defendant Lemon's request does not demonstrate how the Superseding Indictment fails to inform him of the charge with "sufficient precision to enable him to prepare for trial" and to avoid or minimize the danger of surprise at trial." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009). Accordingly, this request should be denied.

As to the materials that pertain to *Giglio*, which the Government believes to be Item 4, 707-1 § III, para. G, H, K, L, the Government hereby incorporates its arguments from Section "I" of this brief.

As to materials that pertain to the Jencks Act, which the Government believes to be 707-1, § IV, the Government opposes this request and hereby incorporates its arguments from Section "A" of this brief.

As to Requests 11, 707-1 § III, O, P, and § VI., 707-2, 707-3 at 2, this request should be denied as it requests information not subject to disclosure under Rule 16. Specifically, rough notes do not qualify as Rule 16 material because they constitute the agent's impression, not a statement by the defendant. *See Polk*, 715 F.3d at 249-50. Likewise, "Fed. R. Crim. P. 16(a)(2) authorizes the Government to refuse discovery of reports, memoranda, or other Government documents made by the attorney for the Government or other Government agents in connection with the investigation or prosecution of the case prior to trial." *United States v. Krauth*, 769 F.2d at 476. Additionally, "[m]aterials relevant to agency guidelines are not discoverable as 'material to the defense' or *Brady*." *See United States v. Salyer*, 271 F.R.D. 148, 168-69 (E.D. Cal. 2010) (citing *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)). Accordingly, these requests should be denied.

As to any request that may encompass 404(b) notice, which the Government believes to be 707-1, § V, the Government incorporates its argument from Section "C" of this brief.

## L. **Response to Defendant Bollman's Second/Renewed Motion for Release or *In Camera* Review of Grand Jury Materials (Doc. 715)**

Defendant Bollman renews his request for release or *in camera review* of grand jury materials pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). (Doc. 715.) The Government renews its objection to the disclosure of grand jury materials to Bollman and the other defendants. *See Govt's Opp to Defense Motions for Disclosure of Grand Jury Transcripts* (Doc. 479). As to an *in camera* review of grand jury materials, this request should be denied as moot. The District Court has already ordered the Government to provide for *in camera* review of: "(1) the presentation by the Department of Justice attorney(s) and case agent(s) to the grand jury on January 29, 2026, resulting in the indictment (ECF No. 39); and (2) the presentation by the Department of Justice attorney(s) and case agent(s) to the grand jury on February 26, 2026, resulting in the superseding indictment. (ECF No. 144)." (*See* Doc. 631.) The Government has done so.

These materials included "any introduction, legal instruction for the two counts, witness testimony, and closing, including answers to questions from the grand jurors." (*Id.*) This order covers Defendant's request. Accordingly, the Court should deny defendant's Bollman's motion as moot.

## CONCLUSION

For the foregoing reasons, Defendants' evidentiary and discovery related requests should be denied, except to the limited extent not opposed in the foregoing arguments.[2]

DATED: October 9, 2026.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

JOHN R. ARBOLEDA
Acting Trial Attorney

*/s/ John R. Arboleda*
JOHN R. ARBOLEDA
No. 1050716FL
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: john.arboleda@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] The undersigned certifies that this brief is 8,876 words, excepting the caption and signature block.